COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges AtLee and Frucci
Argued by videoconference

LEVI WILLIAM WHEELER, JR.

                                                         MEMORANDUM OPINION* BY
v.        Record No. 1601-24-1                    JUDGE RICHARD Y. ATLEE, JR.
                                                                MARCH 17, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Charles E. Haden for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Levi William Wheeler, Jr., of malicious

wounding, reckless handling of a firearm, attempted robbery, two counts of use of a firearm during

the commission of a felony, and shooting into an occupied building.[2]  On appeal, Wheeler raises

two arguments.  First, Wheeler contends that the evidence was insufficient to support his

convictions.  Next, he argues that the trial court erred by giving the jury an instruction defining

"deadly weapon."  We affirm the trial court's judgment, but we remand for correction of the

sentencing order.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] We note that the first page of the final sentencing order in this case erroneously lists two
convictions for shooting into an occupied building and one count of use of a firearm in the
commission of a felony.  The remainder of the order correctly lists one conviction for shooting
into an occupied building and two convictions for use of a firearm.  Accordingly, this case is
remanded to the trial court for the sole purpose of amending the final order to correctly reflect
Wheeler's convictions.  *See* Code § 8.01-428(B).

## I. Background

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)).

Around 4:30 a.m. on July 13, 2022, Jacob Vaughan awoke to a knock on his front door. He opened the door to see two unknown men. One stood on the front steps and the other in the front yard. The man on the steps stated that "[s]omebody sent them there to get dope." Vaughan told the men to leave. The man on the steps handed Vaughan a phone and stated that "Josh" was on the line. Vaughan took the phone and as he put it to his ear, the man on the steps produced a gun and held it to Vaughan's chest.

Vaughan shoved the man away, dropped the phone, and heard two shots. As Vaughan retreated inside and shut the door, he heard five or six more shots. He discovered that he had been shot in the arm and the chest. Vaughan called 911, and emergency responders took him to a nearby hospital. Vaughan stated that the men were unfamiliar to him, and he was unable to provide a detailed description of either man.

Newport News Police Sergeant Meisel arrived at Vaughan's house at 4:47 a.m. and accompanied Vaughan to the hospital. Vaughan told Meisel about the phone that he was handed, but he did not know what happened to it after he was shot. That morning, Detective Kidder also went to Vaughan's house to investigate. Meisel called Kidder from the hospital and suggested that Kidder look for the phone Vaughan was handed. Kidder found the phone on the ground next to the front steps. The phone was locked and had been "activated as lost." Kidder subsequently obtained a warrant to search the device and access the service provider's records. The records indicated that the phone was registered to Wheeler.

On July 21, Kidder spoke with Wheeler. When Kidder told Wheeler that his phone had been found at the scene of a shooting, Wheeler claimed that he lost his phone on July 12, the day before the shooting. He stated that he was walking into a grocery store while arguing with his wife on the phone. He became angry and threw away all the possessions he carried, including his phone and wallet. When he returned later to retrieve his items, his phone was gone.

On July 28, the police extracted data from Wheeler's phone. After reviewing the data, Kidder determined that the phone's data was inconsistent with Wheeler's claim that he lost the phone "during the hours of darkness" on July 12. From July 12 to July 13 at 1:11 a.m., Wheeler's phone and his wife's phone connected 15 times. His phone also connected with other numbers multiple times throughout the evening of July 12 and the early morning hours of July 13. The last call initiated from Wheeler's phone was at 4:36 a.m. on July 13. The call went unanswered.

The data extraction also revealed that Wheeler sent a text message to someone in the early morning hours of July 11 stating, "Yo I'm tryna hit this lick you down." Kidder testified that a "lick" meant "they're going to rob or steal something from somebody." Wheeler added, "20 bands at least," meaning $20,000. Around that same time, Wheeler sent a message to a different person stating, "Tryna get a pistol so I can hit a quick lil lick." The person responded, "we need to set a lick up or something," and Wheeler replied: "I got one on the line right now a big one but I got you I'm [going to] call you when I'm close." Late on the night of July 12, that person texted Wheeler that he had "something" for Wheeler, and Wheeler asked the person to put it under the doormat. At 4:06 a.m. on July 13, the morning of the shooting, Wheeler texted that same person, "181 hawthorn," Vaughan's address. Additionally, Wheeler texted his wife around an hour before the shooting and stated: "Look if everything go right ima have enough money for you to pay off all of the bills."

Police arrested Wheeler in August 2022. He was charged with one count of malicious wounding, one count of discharging a firearm into an occupied building, one count of attempted robbery with a firearm, two counts of using a firearm in the commission of a felony, and one count of reckless handling of a firearm.[3]

At trial, at the close of the Commonwealth's case-in-chief, Wheeler made a motion to strike, raising several arguments. First, Wheeler argued that the evidence was insufficient on the attempted robbery charge because the Commonwealth failed to prove intent to steal. Next, Wheeler argued that the Commonwealth's evidence failed to prove that Wheeler was present at Vaughan's home during the incident. Finally, Wheeler asserted that the evidence was insufficient to prove that he recklessly handled a firearm. The trial court denied the motion to strike.

Wheeler called Detective Campbell as a witness. Campbell testified that, during the investigation, he showed Vaughan a six-person photo lineup that included a picture of Wheeler. Vaughan did not identify Wheeler as the perpetrator. Instead, Vaughan identified another person's photo as having the "[c]losest" resemblance to the perpetrator. At the conclusion of all the evidence, Wheeler renewed his motion to strike, and the trial court again denied the motion.

Without objection, the trial court instructed the jury on the elements of malicious wounding, the definition of malice, and that malice could be inferred from the use of a deadly weapon. Wheeler, however, objected to the Commonwealth's proffered Instruction 12. The instruction, which accompanied the instruction on inferring malice, stated: "A deadly weapon is any object or instrument not part of the human body, that is likely to cause death or great bodily injury because of the manner and circumstances in which it is used." Wheeler argued that the model instruction was typically used "when there's no clear deadly weapon." He asserted that the instruction was

---

[3] Wheeler was also charged with one count of conspiracy to commit robbery and one count of brandishing a firearm, but the trial court granted Wheeler's motion to strike both charges.

repetitive of another instruction[4] and that the jury would know instinctively that a firearm is a deadly weapon. The court overruled the objection and granted the instruction. The court also gave other instructions defining "firearm."

The jury found Wheeler guilty of all charges. Wheeler now appeals.

## II. ANALYSIS

A. *The evidence was sufficient to sustain Wheeler's convictions.*

Wheeler challenges the sufficiency of the evidence to sustain his convictions. In doing so, Wheeler raises three arguments. First, he argues that the Commonwealth failed to identify him as the perpetrator of any of the charged offenses. Second, Wheeler argues that the evidence was insufficient to establish he had the intent required to sustain his attempted robbery conviction. Finally, he argues that the evidence was insufficient to convict him of reckless handling of a firearm. We see no error in the trial court's actions.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

---

[4] Wheeler argues that Instruction 12 was duplicative of Instruction 16, which states in relevant part: "[A] firearm is any instrument that is capable of expelling a projectile by force or gunpowder. A firearm is also an object that is not capable of expelling a projectile by force or gunpowder but gives the appearance of being able to do so."

(quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

It is well-established that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Id.* (alteration in original) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (en banc) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "In other words, in a circumstantial evidence case . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Id.*

1. <u>The evidence was sufficient to identify Wheeler as the perpetrator.</u>

Wheeler argues that the Commonwealth failed to prove that he was the perpetrator.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, "[w]e review the fact finder's determination regarding the identity of the perpetrator considering 'the totality of the circumstances.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting

*Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002)).  Identity may be proven by circumstantial evidence.  *Snead v. Commonwealth*, 4 Va. App. 493, 496 (1987).

Here, the evidence established that Wheeler was the perpetrator.  Vaughan testified that the perpetrator handed him the phone, put a gun to his chest, and fired the gun, causing Vaughan to drop the phone.  Wheeler admitted the phone was his but claimed that it had been lost and stolen before the shooting.  But data from the phone established that Wheeler used it repeatedly in the hours when he claimed he no longer possessed it, belying his claim that the phone was stolen.  The data showed that Wheeler contacted his wife's phone at least 15 times, including a text message to his wife only an hour before the shooting.  The jury reasonably inferred that the phone the police found on Vaughan's front porch belonged to the shooter.  *See Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) ("[I]n drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he has lied to conceal his guilt.").  Thus, the totality of the evidence sufficiently establishes Wheeler's identity as the perpetrator of all the offenses for which he was convicted.

    2.  <u>The evidence was sufficient to prove that Wheeler acted with the intent required to sustain his attempted robbery conviction.</u>

Wheeler asserts that the evidence failed to establish he intended to rob Vaughan and, thus, was insufficient to sustain his attempted robbery conviction.

"The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged."  *Pulley v. Commonwealth*, 74 Va. App. 104, 124 (2021) (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020)).  To convict a defendant of attempted robbery, "the Commonwealth is required to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation."  *Jones v. Commonwealth*, 70 Va. App. 307, 318 (2019) (en banc) (alterations in original) (quoting *Pitt v. Commonwealth*, 260 Va. 692, 695 (2000)).

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Perkins*, 295 Va. at 330 (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). Among other things, intent may be shown by the acts and conduct of the accused. *Id.*

Here, the evidence established that Wheeler planned to travel to Vaughan's house and rob him. Leading up to the shooting, Wheeler texted two individuals indicating his plan to "hit a lick" for at least $20,000. Wheeler texted one of those individuals that he needed to obtain a firearm so that he could carry out his plan. He then texted Vaughan's address to that same number around thirty minutes before the shooting. It was reasonable for the factfinder to conclude, based on Wheeler's statements and conduct leading up to the shooting, that he intended to rob Vaughan by force or intimidation. Accordingly, the evidence was sufficient to establish that Wheeler acted with the intent required to sustain his attempted robbery conviction.[5]

3. The evidence was sufficient to prove that Wheeler recklessly handled a firearm.

Wheeler asserts that the evidence failed to prove he recklessly handled a firearm.

Code § 18.2-56.1(A) provides, "It shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb, or property of any person." "The manifest purpose of Code § 18.2-56.1(A) is to prevent actual endangerment, not the mere appearance of endangerment." *Jones v. Commonwealth*, 65 Va. App. 274, 278 (2015). "As this Court has explained, the reckless handling of a firearm is not limited to a handling 'so gross, wanton or culpable as to show a reckless disregard of human life.'" *Edelstein v. Commonwealth*, 83 Va. App. 345, 361 (2025) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 492 (1988)). However, "it must be more than that necessary for ordinary negligence." *Mangano v. Commonwealth*, 44 Va. App. 210, 217 (2004)

---

[5] Because Wheeler relies on the same argument to challenge one of his convictions for using a firearm in the commission of a felony, we conclude that the evidence is likewise sufficient to sustain the use of a firearm conviction.

(noting that "[t]he culpable conduct necessary for reckless conduct falls between the criminal negligence necessary for involuntary manslaughter and ordinary negligence"). It follows that "reckless conduct requires an awareness that serious injury will likely result." *Id.* "However, a defendant 'need not have actually discharged a firearm at a person or at property in order for him to be convicted under the statute.'" *Edelstein*, 83 Va. App. at 361-62 (quoting *Luck v. Commonwealth*, 30 Va. App. 36, 45 (1999)).

Here, Wheeler committed acts sufficient to sustain the reckless handling conviction when he produced the firearm and pointed it directly at Vaughan's chest. *See Bailey v. Commonwealth*, 5 Va. App. 331, 334 (1987) (finding the evidence sufficient to sustain a reckless handling conviction where the defendant "intentionally remov[ed] the loaded gun from his pocket" and pointed it at a victim that was "no more than five to ten feet away"). Because he pointed the firearm directly at Vaughan at close range, a factfinder could have reasonably inferred that Wheeler was aware of the risk of serious injury. Accordingly, the evidence was sufficient to prove that Wheeler recklessly handled the firearm on Vaughan's front porch.

B. *The trial court did not abuse its discretion by overruling Wheeler's objection to Jury Instruction 12.*

Wheeler argues that the trial court erred by instructing the jury on the definition of a "deadly weapon." We disagree.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Id.* at 675. "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to

- 9 -

the proponent of the instruction." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)).

It is undisputed that Instruction 12 is a correct statement of law. And where a proffered jury instruction is an otherwise correct statement of law, such instruction "is proper only if supported by more than a scintilla of evidence." *Commonwealth v. Cary*, 271 Va. 87, 100 (2006) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). Wheeler does not argue that the instruction was unsupported by the evidence, and the record would not support such assertion. Between Vaughan's testimony, the cartridge casings recovered from Vaughan's home, and the data from Wheeler's phone, the record contains more than a scintilla of evidence to support the instruction.

Instead, Wheeler argues that an instruction defining the term "deadly weapon" is only necessary when there's an object that is "not necessarily a weapon in and of itself" but "may be used in a deadly way."[6] Wheeler asserts that jurors would instinctively know that a firearm is a deadly weapon and, thus, Instruction 12 improperly singled out a particular fact for emphasis. But the instruction merely defines the term "deadly weapon." *See Jones v. Commonwealth*, 228 Va. 427, 446 (1984) (recognizing that a trial court is accorded discretion to instruct the jury on the definition of legal terminology as it is used in the context of a given offense). We see nothing in the instruction that would "suggest that specific evidence impelled any particular finding," "comment upon specific facts proven in the case," or "suggest the credibility or weight which should be given [to] any specific evidence." *Terry v. Commonwealth*, 5 Va. App. 167, 171 (1987). In other words, the instruction did not impermissibly single out any fact for emphasis. Accordingly, the trial court did not abuse its discretion by granting Instruction 12.

---

[6] Wheeler also argues that Instruction 12 was duplicative of Instruction 16, which included a definition of the term "firearm." Wheeler's assertion is misguided because the terms "firearm" and "deadly weapon" have distinct meanings.

III. Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's judgment, but we remand the matter for correction of a scrivener's error in the sentencing order.

*Affirmed and remanded.*